[No. 15084. Department One. — September 1, 1893.]

## THOMAS SMITH, RESPONDENT, v. OCCIDENTAL AND ORIENTAL STEAMSHIP COMPANY, APPELLANT.

NEGLIGENCE — CONTRIBUTORY NEGLIGENCE — QUESTION OF LAW — NONSUIT. — In an action for negligence, when the facts are undisputed and clearly settled, contributory negligence is a question of law for the court to determine, and if, at the close of the testimony, the facts shown by the evidence together with the inferences therefrom which reasonable men would agree upon are clearly defined, it is the duty of the court, upon proper application therefor, if it shall be of the opinion that these facts establish contributory negligence on the part of the plaintiff, or do not as a matter of law constitute negligence on the part of the defendant, to grant a nonsuit, or direct a verdict in favor of the defendant.

ID. — QUESTION OF FACT FOR JURY. — When the evidence is conflicting, or when reasonable men might differ as to the inferences which ought to be drawn from the undisputed evidence, the question of negligence or contributory negligence is one of fact for the jury to determine; and this rule is especially applicable when the negligence of the plaintiff depends upon conflicting evidence or the credibility of witnesses, or a comparison of his conduct with that which may be assumed to be the conduct of an ordinary man, or results from a disregard of his knowledge of the surroundings, and that knowledge depends upon his opportunity to acquire it from experience.

ID. — PROXIMITY AND SEQUENCE OF FACTS — PROVINCE OF JURY. — The proximity of one fact to another in a case, and their relation or sequence to each other, is essentially within the province of the jury to determine, and whenever the injury complained of is the result of a series of acts that are interlinked with or dependent upon each other, the certainty that the final act is the result of a prior one diminishes in proportion to the remoteness of the first act from the result, and the jury must determine whether the several acts constitute such a successive series, or are linked together so as to form one continuous whole, or whether they are so independent that the result cannot be said to be the natural consequence of the first.

ID. — CONTRIBUTORY NEGLIGENCE — BURDEN OF PROOF — PROXIMATE CAUSE OF INJURY. — In an action for damages for injuries alleged to have been caused through negligence of the defendant, it is sufficient for the plaintiff to show, in the first instance, that the injury resulted from the negligence of the defendant, and he need not show a want of contributory negligence in himself; but contributory negligence is an affirmative defense to be established by the defendant, and must be affirmatively shown to be the proximate cause of the injury.

ID. — NONSUIT — SHOWING BY PLAINTIFF — AFFIRMATIVE DEFENSE — DISCONNECTED FACTS — QUESTION FOR JURY. — Where the case made by the plaintiff himself establishes such negligence on his part as will defeat his right to recover, the court may grant a nonsuit; but where contributory negligence is not so established, and is an affirmative defense to be shown by the defendant, it can rarely happen that the court will be justified in withdrawing the case from the jury, or in determining as matter of law that the plaintiff's negligence was the proximate cause of the injury; and where the facts constituting the negligence of plaintiff and of defendant are disconnected so that it cannot be determined as matter of law that one was the cause or sequence of the other, their relation or dependence must be submitted to the jury.

ID. — INJURY TO STEVEDORE — FALL THROUGH UNLIGHTED OPEN HATCHWAY — CONTRIBUTORY NEGLIGENCE — FACTS NOT APPEARING — INFERENCES — QUESTION FOR JURY. — In an action by a stevedore against a steamship company to recover damages for injuries received through the alleged negligence of the

company in leaving open a hatchway, down which he fell to his injury for want of sufficient light to discern it, where the conduct of the plaintiff while on the vessel was not distinctly before the jury, and the extent of his knowledge of the danger by reason of his previous experience was not clearly shown, it is proper for the jury to determine the facts established by the evidence and all inferences therefrom, and whether the plaintiff had been negligent or not.

ID. — INSTRUCTION — KNOWLEDGE OF PLAINTIFF — CONCLUSIVENESS OF VERDICT. — Under an instruction to the jury given in such action at the request of the defendant, that if they should find that the plaintiff was familiar with the location and position of the hatchway, or knew or was informed, or by the exercise of ordinary care could have learned that the hatchway through which he fell was open a sufficient time before the accident to have avoided it by the exercise of ordinary care, or if he did not exercise ordinary care in approaching the hatchway, they should find a verdict in favor of the defendant, the determination by the jury of the propositions therein stated, in favor of the plaintiff, is conclusive upon appeal where the evidence given thereon is conflicting.

ID. — CONFLICTING EVIDENCE — OPPORTUNITY OF KNOWLEDGE OF DANGER — INCONCLUSIVE TESTIMONY. — Where the evidence as to plaintiff's knowledge, or means of knowledge, is substantially conflicting, testimony of witnesses to the effect that plaintiff had previously worked upon the ship, and had had an opportunity to learn the position of the hatchway, and that it was open at times such as that when the plaintiff was injured, is not conclusive of such knowledge, but was to be considered by the jury in connection with the other evidence in the case.

ID. — APPROACHING HATCHWAY WITHOUT SUFFICIENT LIGHT — QUESTION OF ORDINARY CARE — INCONCLUSIVE PROOF. — Whether the plaintiff at the time of the accident was in the exercise of ordinary care, when he found that it was so dark that he could not see, in going from the foot of a ladder to the hatchway, considering that others were coming down from the steerage deck and pressing him behind, and that those in front were advancing, one having gone to the hold in safety, was to be considered by the jury in determining the question of his negligence, but was not itself conclusive thereof.

ID. — KNOWLEDGE OF CUSTOM — REFUSAL OF INSTRUCTION. — The refusal of the court to instruct the jury that their verdict must be in favor of the defendant if they should find that the plaintiff knew, or could by ordinary care have learned, that it was the custom of the defendant sometimes to leave the hatchway open and sometimes closed, when the plaintiff would have occasion to descend the same in the course of his employment, was proper. Such facts, if they existed, were only proper to be considered by the jury in determining whether the plaintiff was guilty of contributory negligence, but were not of themselves determinative of that issue.

ID. — AVOIDANCE OF RELEASE — MISTAKE OF FACT — INABILITY TO READ — RECEIPT. — A release executed to the defendant by the plaintiff in consideration of its caring for him at the hospital until he should have sufficiently recovered to resume labor, is not binding on him when it is shown that he could not read the instrument, and that he did not read it when he signed it, but signed it at the request of his wife, who could not read it, and who when it was read and explained to her by one of the defendants' employees understood that it was simply a receipt.

ID. — ESTOPPEL OF PERSON ABLE TO READ — PROOF OF NON-ASSENT. — Although it is a general rule that when a person with the capacity of reading and understanding an instrument signs it, he is in the absence of fraud and imposition bound by its contents and is estopped from saying that its provisions are contrary to his intentions or understanding, still, if the circumstances of the transaction are such that he is not estopped from setting up his want of assent, he can be relieved from the effect of his signature if it can be made to appear that he did not in reality assent to it.

Jury Trial — Submission of Special Issues — Discretion — Exception. — The submission to the jury of special issues is within the discretion of the court, and the refusal of the court to grant a request therefor is not the subject of an exception.

Appeal from a judgment of the Superior Court of the City and County of San Francisco, and from an order denying a new trial.

The facts are stated in the opinion of the court.

, *Foshay Walker*, and *Fred B. Lake*, for Appellant.

Plaintiff was guilty of contributory negligence in law. (*Taylor* v. *Carew Manuf. Co.*, 140 Mass. 150; 143 Mass. 470; *Kolb* v. *Sandwich Enterprise Co.*, 36 Ill. App. 419; *Flemming* v. *Western Pacific R. R. Co.*, 49 Cal. 253; *Schwartz* v. *Cornell*, 13 N. Y. Supp. 355; *Kossmann* v. *Stutz*, 5 N. Y. Supp. 764; *Early* v. *Lake Shore R. R. Co.*, 66 Mich. 349; *Balle* v. *Detroit Leather Co.*, 73 Mich. 158; *Doyle* v. *Jersey City*, 46 Fed. Rep. 134; *Bowden* v. *The Sir Garnet Wolseley*, 41 Fed. Rep. 896; *Barnes* v. *Sowden*, 119 Pa. St. 53; *McDonald* v. *Rockhill etc. Co.*, 135 Pa. St. 1.) Even if plaintiff was not guilty of contributory negligence in law, the risk of falling down the hatchway in question was one of the "ordinary risks of the business in which he was employed" within the meaning of section 1970 of the Civil Code, and was assumed by plaintiff as a part of the consideration for his employment. (*Taylor* v. *Carew Manuf. Co.*, 140 Mass. 150; *Kolb* v. *Sandwich Enterprise Co.*, 36 Ill. App. 419; *McGlynn* v. *Brodie*, 31 Cal. 376; *Sowden* v. *Idaho Q. M. Co.*, 85 Cal. 443; *Vaughn* v. *California Cent. R'y Co.*, 83 Cal. 18; *Pederson* v. *City of Rushford*, 41 Minn. 289; *Woods* v. *St. Paul etc. R. R. Co.*, 39 Minn. 435; *Missouri Pacific R'y Co.* v. *Somers*, 71 Tex. 700; *Illick* v. *Flint etc. R. R. Co.*, 67 Mich. 632; *Melzer* v. *Peninsular Car Co.*, 76 Mich. 94; *Foley* v. *Pettee M. Works*, 149 Mass. 294.) The plaintiff is bound by his written release. When a party enters into a written contract, in the absence of fraud, he is presumed to understand the terms and legal effect of it and to consent to them. (*Squire* v. *New York Cent. R. R. Co.*, 98 Mass. 239; 93 Am. Dec. 162; *Grace* v. *Adams*, 100 Mass. 505; 1 Am. Rep. 131; 97 Am. Dec. 117; *Rice* v. *Dwight Manuf. Co.*, 2

Cush. 80; *Donlan* v. *Provident Inst. for Savings*, 127 Mass. 183; 34 Am. Rep. 358; *Black* v. *Wabash etc. R'y Co.*, 111 Ill. 351; 53 Am. Rep. 628.)

*J. D. Sullivan*, for Respondent.

The evidence was conflicting as to negligence on the part of the defendant, and the judgment should therefore be affirmed. (*Davies* v. *Oceanic Steamship Co.*, 89 Cal. 280, 285; *Altschul* v. *Doyle*, 48 Cal. 536; *Phelps* v. *Union C. M. Co.*, 39 Cal. 407; *Hunt* v. *Elliott*, 77 Cal. 588; Gear's Index-Digest, p. 56.) The release did not bind plaintiff as the evidence shows that he could not and did not read it before signing it. (See *Crowley* v. *City R. R. Co.*, 60 Cal. 628.) The submission of special issues to the jury was within the discretion of the court, and no error can be properly assigned for refusing such a submission. (*American Co.* v. *Bradford*, 27 Cal. 360–365.)

HARRISON, J. — The plaintiff, while employed as a stevedore upon the defendant's steamship Oceanic, on the 17th of November, 1889, fell through an open hatchway, breaking his leg and sustaining other serious injuries, and brought this action to recover damages therefor, alleging that they were caused by the negligence of the defendant. The jury rendered a verdict in his favor for three thousand dollars, and from the judgment thereon and an order denying a new trial the defendant has appealed.

On the morning of that day the defendant with several others was directed by the foreman of the stevedoring work of the defendant to go down to the hold of the vessel for the purpose of stowing away a cargo of coal that was to be loaded from another vessel alongside. The hatchway on the main deck was closed and the men were compelled to go forward and down to the steerage deck, and then along this deck about twenty-five feet to a stairway leading to the orlop deck, and after going down these steps, go along the orlop deck to the hatchway, where there was a ladder leading to the hold. The foot of the steps to the orlop deck was about ten feet from the coaming of the hatchway, and there were two or three stanchions between these steps and the hatchway. When the hatchway of the main

deck was open, the light from above made it light on this deck, so that the opening and the ladder leading to the hold could be clearly seen, but on this morning that hatchway was closed, so that it was quite dark on the orlop deck. It was also customary, when the men were stowing coal in the hold, to have a lighted lamp hung near the hatchway, and it was the duty of the foreman of the gang to light this lamp upon reaching the place, but on this morning others went ahead of the foreman and the lamp was not lighted until after the accident. The men went down the stairway to the orlop deck in single file, and, as each reached the foot of the steps, he passed along to make room for the others to descend. One man had gone into the hold and another had commenced to light the lamp, but, before it was lighted, the plaintiff fell into the hold, a distance of about twenty feet, sustaining the injuries aforesaid. The testimony concerning the way in which the accident occurred was given by the plaintiff on cross-examination as follows:—

"Q. How did you come to fall down that hatchway, Mr. Smith? A. Because I was getting down on the orlop deck, and there were four or five of us; I don't know how many; and, of course, we had to keep getting that way, as they had to come down the ladder. The ladder was away and the standee (something of a bit of a ladder that they keep the freight from falling into the hold) we had to get down on that, and, of course, I had to get further away from this man, and, of course, as I came here they all were all here coming behind me and down I go twenty feet into the hold.

"Q. Was there not room enough between the stairway leading to the orlop deck and where this hatchway was for the men to stand? A. They could if they could have seen it. I was trying to stand there and I fell down. I could not see where it was. It was that dark you could not see your finger and could not see nothing. If there had been a light I could have had room to stand."

At the close of the testimony the defendant requested the court to instruct the jury to find a verdict in its favor, and in support of this request urges that it appeared from the evidence that the plaintiff was guilty of such contributory negligence as to prevent his recovery.

**1.** When the facts are undisputed and clearly settled, contributory negligence is to be determined by the court as a matter of law, just as any other question of law depending upon a given state of facts, or as the judgment which is to be rendered upon a special verdict; and, if at the close of the testimony in a case the facts shown by the evidence and the inferences therefrom which reasonable men would agree upon are clearly defined, it is the duty of the court upon proper application therefor, if it shall be of the opinion that these facts establish contributory negligence on the part of the plaintiff, or do not as a matter of law constitute negligence on the part of the defendant, to grant a non-suit, or direct a verdict in favor of the defendant, but "when the evidence is conflicting, or when reasonable men might differ as to the inferences which ought to be drawn from the undisputed evidence, the question of negligence or contributory negligence is not one of law, but of fact." (*Davies* v. *Oceanic Steamship Co.*, 89 Cal. 280.) Especially is this rule applicable when the negligence of the plaintiff depends upon conflicting evidence, or the credibility of witnesses, or a comparison of his conduct with that which may be assumed to be the conduct of an ordinary man, or results from a disregard of his knowledge of the surroundings, and that knowledge depends upon his opportunity to acquire it from experience. "Where the essential fact in a case is whether contributory negligence did or did not exist, and this depends upon the credibility of witnesses or inference from facts and circumstances about which honest and impartial men might differ, such a case should be submitted to the jury." (*Swoboda* v. *Ward*, 40 Mich. 424.) The proximity of one fact to another in a case, and their relation or sequence to each other, is essentially within the province of a jury to determine, and whenever the injury complained of is the result of a series of facts that are interlinked with or dependent upon each other, the certainty that the final act is the result of a prior one diminishes in proportion to the remoteness of the first act from the result, and the jury must determine whether the several acts constitute such a successive series, or are linked together so as to form one continuous whole, or whether they are so independent that the result cannot be said to be the natural consequence of the first. In Massachusetts and in New

York, and in several other states, it is held that the plaintiff must show as a part of his right of action against the defendant that he himself exercised ordinary care, and that his own negligence did not cause or contribute to the injury sustained, and the reported opinions of courts in those states upon this proposition are apt to be misleading unless attention is given to the distinction between the rule there observed and that which is established in this state. In this state, in accordance with the weight of authority (Shearman & Redfield on Negligence, secs. 107, 108), as well as with the principles upon which the rule rests, it is established that it is sufficient for a plaintiff to show, in the first instance, that the injury resulted from the negligence of the defendant. (*Nehrbas* v. *Central Pacific R. R. Co.*, 62 Cal. 320; *MacDougall* v. *Central R. R. Co.*, 63 Cal. 431; *Magee* v. *North Pacific C. R. R. Co.*, 78 Cal. 430; 12 Am. St. Rep. 69.) Whenever the burden of proof of any issue rests upon a party, the failure to make such proof necessitates a decision against him, and in those states in which it is held necessary for the plaintiff to show that he was himself without negligence and in the exercise of ordinary care, a nonsuit would be granted more frequently than where a different rule prevails. There may be such contributory negligence on the part of the plaintiff as will defeat his right to recover, and it may happen that in presenting his own case he will show such facts as will establish that his own negligence so contributed to his injury as to prevent a recovery, and in such case the court will be authorized to grant a nonsuit. But where the contributory negligence of the plaintiff is an affirmative defense to be established by the defendant, it will not often happen that the facts presented by the plaintiff in the development of his case will be such as to justify the court in withdrawing the case from the jury. The contributory negligence of the plaintiff that will defeat his right to recover must be shown to be the proximate cause of the injury, and if the facts constituting this defense are so disconnected with the facts constituting the negligence of the defendant that they do not appear until after the presentation of the defendant's case, it will rarely occur that it can be determined, as a matter of law, that the one was the cause or sequence of the other, and if not, their relation or dependence should be submitted to a jury.

In the present case the conduct of the plaintiff while on the vessel was not distinctly before the jury, and the extent of his knowledge of the danger by reason of his previous experience was not clearly shown, and it was properly left to the jury to determine, not only the facts established by the evidence, but also the inferences to be drawn from those facts, and whether he had been negligent or not.

2. At the request of the defendant the court instructed the jury that if they should find from the evidence that the plaintiff was familiar with the location and position of the hatchway, or knew, or was informed, or by the exercise of ordinary care could have learned that the hatchway through which he fell was open a sufficient time before the accident to have avoided the same by the exercise of ordinary care, or if, after descending the ladder to the orlop deck, he did not exercise ordinary care in approaching the hatchway, they should render a verdict in favor of the defendant. The verdict in favor of the plaintiff establishes that the jury believed that neither of these propositions was sustained by the evidence, and, as the evidence on each of the propositions was conflicting, the determination of the jury upon its weight as well as its value is conclusive. The plaintiff himself testified that he was not familiar with the size or location of the hatchway; that, although he had been up and down this hatchway before, it had always been by a continuous trip from the hatchway on the main deck; that he had never before been down in the way he went at this time; that when the hatchway on the main deck was open it threw light upon the hatchway through which he fell, but on this morning the hatchways above the orlop deck were closed, and it was so dark that nothing could be seen there; that when a hatchway like this is open there are usually lights near it, or it is protected with rods or chains as a guard, but that upon this morning there were no guards to this hatchway and no light upon this deck. There was testimony in behalf of the defendant to the effect that when the men were directed to go on board the vessel they were told by the foreman that the hatchway was open, and to wait until the lights on that deck should be lighted before going down, but the plaintiff testified that he did not hear these instructions, and in this he was corroborated by

others who were with him, and who testified that no such instructions were given. The testimony that the plaintiff had previously worked upon the steamer and had had an apportunity to learn the position of the hatchway, and that it was open on such occasions, was not conclusive of such knowledge, but was to be considered by the jury in connection with the other evidence in the case. (*Ingerman* v. *Moore*, 90 Cal. 424; 25 Am. St. Rep. 138.) Whether, under the circumstances, after he had descended to the orlop deck and found it was so dark that he could not see, he was in the exercise of ordinary care in going from the foot of the ladder to the hatchway, considering that others were coming down from the steerage deck and pressing him behind, and that those in front were advancing, one having gone to the hold in safety, was also to be considered by the jury in determining the question of his negligence, but was not itself conclusive thereof.

3. One of the defenses pleaded by the defendant was a release executed to it by the plaintiff, in consideration of its caring for him at the hospital until he should have sufficiently recovered to resume labor. Plaintiff, in the affidavit which he filed in reply to this averment, and also in the answer filed by him, admitted the signing of this release, but alleged that, by reason of the pain and suffering consequent upon the injuries he had received, he was incapacitated from attending to business, and ignorant of the contents of said instrument, and signed the same without knowing or understanding what he was doing, and that it was not his free and voluntary act. The defendant requested the court to instruct the jury that, if they should find that the plaintiff did freely and voluntarily sign and deliver the release to the defendant, and that the defendant had complied with the conditions therein expressed, their verdict should be for the defendant. The court modified the instruction requested by adding thereto that they should also find that the plaintiff had knowledge of the contents of said paper, or its purport, or had the means of such knowledge, and gave it thus modified. To the refusal to give it as requested, and to the giving it as modified, the defendant excepted. We are of the opinion, however, that under the testimony given at the trial, the court was justified in making the modification. The gen-

eral rule is that when a person with the capacity of reading and understanding an instrument signs it, he is, in the absence of fraud and imposition, bound by its contents, and is estopped from saying that its provisions are contrary to his intentions or understanding; but it is also a general rule that the assent of a party to a contract is necessary in order that it be binding upon him, and that, if the circumstances of a transaction are such that he is not estopped from setting up his want of assent, he can be relieved from the effect of his signature if it can be made to appear that he did not in reality assent to it. (*Foster* v. *MacKinnon*, Law R. 4 Com. P. 704; *Whitney* v. *Snyder*, 2 Lans. 477; *Selden* v. *Myers*, 20 How. 506; *Trambly* v. *Ricard*, 130 Mass. 259; *Freedley* v. *French*, 154 Mass. 339.) In the present instance the plaintiff's knowledge of the instrument which he signed was made one of the issues before the jury without any objection at the trial, and it was therefore proper for the court to submit that issue to the jury. It does not appear that anything was ever said to the plaintiff concerning a release of his claim by any one on behalf of the defendant, and the plaintiff testified that he could not read the instrument, and that he did not read it when he signed it. It had been prepared by one of the employees of the defendant for the purpose of procuring a release, and was given to the plaintiff's wife to procure its signature by her husband. She could not read it, nor could the person who gave it to her, but she testified that at her request it was read to her by Green, the defendant's timekeeper, and that from what he read and his explanation of it to her, she was led to believe that it was simply a receipt, and upon her request her husband signed the paper without reading it. Although Green was a witness in the case, he did not testify about his reading the paper to Mrs. Smith, and in the absence of any contradictory testimony it must be assumed that the understanding which Mrs. Smith received from the paper was that which was given to her by his reading. The representations by Green to the plaintiff's wife must be considered as a representation by the defendant to the plaintiff, and the jury were authorized to find that the plaintiff did not understand the contents or purport of the instrument.

4. The request of the defendant that the court instruct the

jury that their verdict must be in favor of the defendant, if they should find that the plaintiff knew, or could by ordinary care have learned, that it was the custom of the defendant sometimes to have the hatchway open and sometimes closed, when the plaintiff would have occasion to descend the same in the course of his employment, was properly refused. These facts, if they existed, were only proper to be considered by the jury in determining whether the plaintiff was guilty of contributory negligence, but were not of themselves determinative of that issue.

5. The request of the defendant that special issues be submitted to the jury was addressed to the discretion of the court, and the refusal of the court to grant the request was not the. subject of an exception. (*American Co.* v. *Bradford*, 27 Cal. 360.)

The judgment and order are affirmed.

PATERSON, J., and GAROUTTE, J., concurred.

Hearing in Bank denied.