[Civ. No. 3133.   Fourth Dist.   Apr. 24, 1944.]

JOHN W. MUIR, Respondent, v. CHENEY BROS., INCORPORATED (a Corporation) et al., Appellants.

Chester O. Hansen and Eckhart A. Thompson for Appellants.

Galen McKnight for Respondent.

GRIFFIN, J.—On July 14, 1942, plaintiff was injured in an automobile collision near Coalinga, in Fresno County, when his Ford pickup truck was struck by a Mack truck owned by defendant Cheney Bros., Incorporated, and driven by defendant George L. Henslick. In his complaint he prayed for damages for his personal injuries, for medical expenses, and damages to his automobile. No damages were sought for lost wages. Defendants' answer denied negligence on their part, claimed contributory negligence on the part of the plaintiff, and pleaded a signed release of all claims as a bar to plaintiff's cause of action. A verdict for $12,000 in plaintiff's favor resulted. This appeal followed.

The accident forming the basis of this suit occurred at an intersection of Highway No. 33 (Avenal-Coalinga Highway) with Jayne Avenue. Jayne Avenue is 20 feet wide and runs east and west. The Avenal-Coalinga Road formerly ran north and south and intersected Jayne Avenue at right angles. Subsequently, the Avenal-Coalinga Highway was reconstructed to obviate a sharp turn to the west. As now reconstructed, in traveling north, at a point about 250 feet south of the old intersection, that highway, which is about 25 feet in width, curves off to the left (west) in a sweeping turn, forming an arc. It joins with Jayne Avenue at a point about 250 feet west of the old intersection. It is at this new intersection or point where the accident happened.

The intersection thus formed is a rather unusual one and somewhat difficult of description. It is triangular rather than square and is entirely unobstructed. It resembles somewhat the shape of a ''Y''. Highway No. 33 is the main highway between Avenal and Coalinga. Plaintiff was driving his Ford pickup north from Avenal on Highway No. 33 approaching Jayne Avenue. Defendant's Mack truck was being driven

east from Coalinga as it approached the intersection here involved on Highway No. 33.

Plaintiff testified that the Mack truck was being driven on the extreme south side of the road and it appeared to him that it had started around the curve to the south; that he was familiar with the highway and knew that most of the traffic would follow the curve toward Avenal. Observing that the truck appeared to be heading around the curve to the south, he proceeded in a westerly direction on the north half of Highway No. 33 at a point where that highway intersects Jayne Avenue. It is his testimony that the driver of the Mack truck suddenly and without a signal or warning of any kind, turned sharply to the truck driver's left and swung over to the left or north side of the highway across the northerly lane of traffic and onto the northerly shoulder of the highway; that when plaintiff saw the Mack truck swing to the north he was just entering onto Jayne Avenue and, thinking then that the driver of the truck intended to go east on Jayne Avenue, he swung his pickup to the north and to his right to get onto the north half of Jayne Avenue and to permit the truck to pass on the south half of Jayne Avenue; that he succeeded in clearing the southerly lane of traffic and was entirely in the northerly lane with his pickup straightened out in a westerly direction; that the Mack truck did not pass in the southerly lane of traffic but continued onto the northerly shoulder and struck plaintiff's pickup on its right side when the driver of the Mack truck was endeavoring to swing back to the south side of Jayne Avenue. As a result of the accident plaintiff received serious personal injuries.

Defendant Henslick, the driver of the Mack truck, was 16 years of age and did not have a chauffeur's license. He had possessed a driver's license only for a period of six months. He was not a regular truck driver but had been hired as a "swamper" and "grease monkey," and was not supposed to be driving the truck at the time. Clarence L. Williams, the regular driver of the Mack truck, was riding with Henslick when the accident happened. There was testimony that the brakes on the Mack truck were not in good condition. Immediately after the accident, Williams informed the highway patrol officer and another witness that he, and not Henslick, was driving the Mack truck. When the president of defendant corporation arrived at the scene of the accident both

Williams and Henslick informed him that Williams had been driving. Henslick also made this misstatement to the insurance adjuster representing defendant corporation and then later admitted to the adjuster that the statement was not true. He later admitted that these statements were made because Henslick was under age, did not possess a chauffeur's license, and was not supposed to be driving a truck.

Defendant corporation was engaged in the business of commercial trucking and was insured with an automobile insurance company. One of the insurance adjusters talked to plaintiff on July 17, 1942, at the Coalinga Hospital, after the accident. At that time a cast was being put on plaintiff's leg. That same day he left the hospital and the adjuster followed him to his home where he discussed the facts of the case with him. He talked to him again on August 21st, and plaintiff agreed to a settlement. The adjuster stated that it was his job to make these "adjustments" as advantageously as possible to the insurance company; that he had made a complete investigation of the claim, including the taking of statements from plaintiff, Henslick, Williams, and the highway patrol officer; that he knew all the facts; and that he had discussed the provisions of the insurance policy with the insurance company.

Plaintiff testified that he was a "rough neck" in the oil fields; that his education had been limited to high school, and that he had no business experience; that he knew nothing about law; that he had no knowledge of the facts except what he himself had seen; that he did not know who was driving the Mack truck and had been erroneously informed by the patrol officer that Williams was the driver; that he had never seen the insurance policy and knew nothing about its provisions; that at the time of the settlement he had not recovered from the accident; that he was still on crutches and suffering from head injuries; that his only means of supporting his family was by hard labor; that he was not able to work; that he had lost his job as a result of his absence from work and didn't know when or where he could get another job; that he had no money and had no source of income except his wages, which were $135 a month, out of which he was making payments on a home and automobile and was supporting a wife and two children; that he had not been able to make his payments on his home or his auto-

mobile and was borrowing money to supply food for the family table; that most of these facts were known to the insurance adjuster; that the adjuster told plaintiff that the accident was a 50-50 proposition and that defendants were no more responsible for the accident than plaintiff; that the adjuster told plaintiff that he was representing defendants' insurance company and that defendants had "voided" their policy of insurance in permitting an unlicensed driver to drive the truck.

At the trial it was established that the policy was not voided for any reason.

Plaintiff further testified that the adjuster then told him that because the insurance policy had been "voided" he would not make a full settlement with respondent but was willing "to make a contribution to the settlement"; that his insurance company would make such a contribution only because Cheney Bros., Incorporated, had been insured with it for a long time; that the insurance adjuster told him that the settlement *was for his loss of wages only;* that the settlement for loss of wages would not prevent plaintiff from suing defendants for other expense and loss; and that plaintiff's loss of wages was $575. He then testified that the release was never given to him to read and that he never had it in his hands; that he would not have accepted the settlement if he had known that he was signing a complete release of all claims.

Plaintiff's special damages alone amounted to over $1,200, and the jury found that he was entitled to $12,000 upon his entire claim. The issues as framed respecting the validity of the release were submitted to the jury under proper instructions. The issues raised were decided in favor of plaintiff and against the defendants. Plaintiff accepted a demand draft containing the following statement: "In full settlement of all claims." He endorsed this draft and cashed it.

Defendants cite many cases to the effect that courts will not set aside solemn binding written contracts, and proof of their invalidity must be clear and convincing. The Supreme Court of this state has declared exceptions to this general rule in many instances, and in the late case of *Jordan* v. *Guerra,* 23 Cal.2d 469 [144 P.2d 349], where the evidence as to fraud and undue influence was much weaker than in the present case, it sustained a finding of the jury that a similar release was repugnant to just dealing. ■ In view of the decision in that case it cannot be here held that there was not

sufficient evidence to support the conclusions reached by the jury in reference to the "release of all claims" here involved. It is of interest to note that the attorney endeavoring to uphold the validity of the release in the Guerra case is now using that opinion to support the judgment of the trial court setting aside the release in the instant case.

Little, if any, contention is made by defendants that there was no evidence of the negligence of the driver of the Mack truck. The evidence supports the conclusion reached by the jury that the driver thereof was guilty of negligence. The Mack truck was traveling on the north half of Jayne Avenue at the time of the impact. This fact, when considered with the other facts and the circumstances of the case, if believed by the jury, constituted negligence. (Veh. Code, § 527; *Bennett* v. *Chandler,* 52 Cal.App.2d 255 [126 P.2d 173].)

The main portion of defendants' brief is devoted to the contention that plaintiff was guilty of contributory negligence as a matter of law. In this connection it is argued that plaintiff failed to yield the right of way to defendant driver and that the evidence undisputedly shows that defendants' vehicle entered the intersection first, citing *Osgood* v. *City of San Diego,* 17 Cal.App.2d 345 [62 P.2d 195]; *Ebert* v. *Tide Water Associated Oil Co.,* 54 Cal.App.2d 497 [129 P.2d 135]; and similar cases. From the nature of the so-called intersection at the place of the accident it is difficult legally to define the boundaries thereof. The question as to which vehicle entered the intersection first is problematical. Plaintiff offered no instruction on the subject. However, defendants offered and the court gave an instruction in the language of section 86 of the Vehicle Code defining an intersection, which was followed by an instruction in the language of section 550, subdivisions (a) and (b) in reference to the right of way rule at intersections. At the request of the defendant the court specifically instructed the jury that if the driver of the Mack truck entered the intersection prior to the time the Ford pickup entered it, the driver of the Mack truck had the right of way, provided he operated it in a careful and prudent manner and under such circumstances as would make it the duty of plaintiff to yield the right of way to the Mack truck.

At the request of the defendant the trial court also gave an instruction based upon the sudden peril rule. All of these

issues were decided against defendants and in favor of the plaintiff. The evidence produced merely created a conflict for the determination of the jury and it cannot be held that the plaintiff was guilty of contributory negligence as a matter of law.

In *Ebert* v. *Tide Water Associated Oil Company, supra,* cited by defendants, the court held that the question of right of way and of plaintiff's contributory negligence was a question of fact for the trial court and not a question of law for the appellate court. (See, also, *Casselman* v. *Hartford A. & I. Co.,* 36 Cal.App.2d 700 [98 P.2d 539]; *Enz* v. *Johns,* 112 Cal.App. 1 [296 P. 115].) ▮ The question of a plaintiff's contributory negligence is usually one of fact, and becomes one of law only when the evidence is of such a character that it will support no other legitimate inference.

▮ It is next argued that the trial court committed error in permitting plaintiff to prove that most of the traffic proceeding in an easterly direction from Coalinga on the Avenal-Coalinga Highway followed the curve to the south toward Avenal and that not more than two or three out of every ten automobiles proceeded east on Jayne Avenue beyond the curve. It is defendants' argument that the testimony objected to was offered by plaintiff to excuse plaintiff's failure to yield the right of way. Plaintiff argues that the evidence was not offered for that purpose but was offered for the sole purpose of giving to the jury a full knowledge of all the facts and circumstances which existed at the time and place of the accident, and for the purpose of permitting the jury to pass upon the question of whether plaintiff conducted himself as an ordinary and reasonable person would have conducted himself in the light of those same circumstances, citing *Willhite* v. *Freed,* 137 Ore. 1 [299 P. 691]. ▮ It is a well settled rule in this state that the violation of a statute or ordinance constitutes negligence *per se,* and that it constitutes contributory negligence if the failure to comply with such statute or ordinance contributes directly to the injury. (*Hurtel* v. *Albert Cohn, Inc.,* 5 Cal.2d 145 [52 P.2d 922]; *Ferguson* v. *Nakahara,* 43 Cal.App.2d 435, 443 [110 P.2d 1091].) ▮ Under statutes such as section 550(a) of the Vehicle Code, it is immaterial which of two roads is the more traveled (*Casselman* v. *Hartford A. & I. Co., supra.*) The jury were thoroughly and properly instructed on the ques-

tions of law here involved. ▮▮▮ From the reported decisions it is apparent that the evidence was not admissible for the purpose of excusing the plaintiff for the violation of any provisions of the law. However, it was admissible as a part of the res gestae for the purpose of giving to the jury full knowledge of all the facts and circumstances which existed at the time and place of the accident, which were known to the parties, so as to permit the jury to pass upon the question of whether plaintiff conducted himself as an ordinary and reasonable person would have conducted himself in the light of all of the circumstances. (*Hatzakorzian* v. *Rucker-Fuller Desk Co.,* 197 Cal. 82 [239 P. 709, 41 A.L.R. 1027]; *Dewees* v. *Kuntz,* 130 Cal.App. 620, 622 [20 P.2d 733]; *Mace* v. *Watanabe,* 31 Cal.App.2d 321 [87 P.2d 893]; *Scott* v. *Gallot,* 59 Cal.App.2d 421 [138 P.2d 685].)

▮▮▮ Defendants argue that the award of $12,000 is entirely disproportionate to the injuries sustained and is therefore excessive. Plaintiff was 29 years of age at the time of the accident. His head struck the top of the cab. He was thrown forward, striking his knees against the instrument board and his chest against the steering wheel with sufficient force to knock the spokes out of the steering wheel. Although he was not completely unconscious, he remained in a dazed condition for some time. He could remember some things that happened at the scene of the accident and could not remember others. His knee was broken in two places. He received a blow on the head resulting in concussion of the brain, a laceration of the forehead requiring sutures, an injury to his chest, and an injury to his neck. He received many bruises. After the accident he was taken to a doctor's office and a splint was applied to his knee. He was then removed to a hospital where he remained for three days with his leg elevated. A cast was placed about his leg from the ankle to the hip. He remained at home in bed for five weeks. He was carried in and out of the doctor's office and in and out of the hospital. After he was able to leave his bed he was on crutches for some time. A nerve in his knee was affected and after he was able to discard his crutches his knee would give out from under him on occasions. He still complains of headaches from the brain concussion. The pain in his knee bothers him when he uses it in certain ways or when he is tired, and he cannot bend it past a certain point. He illus-

trated this fact in open court. He testified that the injury to his knee handicaps him in his work, and that he walks with a limp when he is tired. In reference to his neck and chest injuries, he testified that they caused him severe pain. One physician testified that one year after the accident when he examined plaintiff, he still had a 30-degree limitation of motion in the knee which prevented him from bending his knee past that point; that the headaches from which plaintiff still suffered at the time of trial were due to brain injury from the concussion and that those headaches might remain with plaintiff permanently. He further testified that the condition of the knee was permanent; that there might be some improvement through physiotherapy, but improvement from that source was problematical and that there would be at least a 20 per cent permanent disability; that the stiffness was such as to handicap plaintiff in his work for the rest of his life. Plaintiff then testified that in a period of less than a year he had lost two jobs on account of his injuries; that although his average earnings were $135 a month, he was working at the time of the accident on a job that paid him $285 a month; that plaintiff's work required him to be down on his knees, to walk in the mud, to stoop and to squat. On a motion for new trial in which the question of the amount of damages was raised, the trial court denied the motion.

The jury and trial judge had the opportunity of hearing the witnesses testify and of observing the plaintiff. It cannot be said from the evidence produced that the verdict was excessive. (*O'Brien* v. *Edens,* 125 Cal.App. 100 [13 P.2d 754] ; *Hellman* v. *Los Angeles Ry. Corp.,* 135 Cal.App. 627 [27 P.2d 946, 28 P.2d 384] ; *Burke* v. *John E. Marshall, Inc.,* 42 Cal. App.2d 195 [108 P.2d 738; *Holt* v. *Yellow Cab Co.,* 124 Cal. App. 385 [12 P.2d 472] ; *Douglass* v. *Crabtree,* 57 Cal.App.2d 568 [134 P.2d 912] ; *Bennett* v. *Hardy,* 108 Cal.App. 473 [291 P. 903].)

Judgment affirmed.

Barnard, P. J., and Marks, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied June 22, 1944.