[Civ. No. 12628. Second Appellate District, Division Two.—December 30, 1940.]

VICTOR BURKE, Respondent, v. JOHN E. MARSHALL, INC. (a Corporation), et al., Appellants.

Lasher B. Gallagher for Respondent.

Syril S. Tipton and John J. Ford for Appellants.

THE COURT.—This action was commenced by plaintiff for the purpose of recovering damages for personal injuries resulting from the negligence of defendants. The first trial of the action resulted in a verdict in favor of plaintiff for $2,500. Plaintiff's motion for a new trial having been granted, the action was again tried before a jury which returned a verdict in favor of plaintiff for $13,500. From the

judgment entered upon the second verdict defendants have appealed.

Plaintiff had been engaged in stevedoring work for eight years prior to May 31, 1938. On that date he was employed as a stevedore to help discharge a cargo of lumber from a steamship which was alongside a dock in the city of Long Beach. The dock was in the possession and under the control of John E. Marshall, Inc., and the ship was owned by plaintiff's employer, Sudden & Christensen. Plaintiff arrived at the dock at about 7:30 on the morning of May 31st, at which time there were two partial loads of lumber on the dock abreast of gear No. 2, as well as other loads at various places on the dock. It was plaintiff's duty to work in connection with the operation of gear No. 2, one of the instrumentalities by which lumber was transferred from the ship to the dock. While waiting to go to work at 8:00 o'clock, plaintiff observed that one of the two loads of lumber abreast of gear No. 2 was removed by a lumber carrier, a four-wheeled vehicle equipped with rubber tires, which can be driven over a pile of lumber, pick it up and transport it elsewhere on the dock. The driver of such carrier sits on top on the left hand side, several feet above the ground, where his forward vision is limited to persons and objects a considerable distance away. When called to work at 8:00 o'clock plaintiff went to his station at gear No. 2 and proceeded to line the gear up where the boom would come out to the dock. It was part of his duty to see that the boom and fall were lined up so that a load of lumber would be placed on the dock at the farthest distance from the ship. In performing this duty it was necessary for him to look upward and toward the ship. Within ten minutes after he commenced work plaintiff was struck by a lumber carrier which was driven by defendant John Doltar, an employee of defendant John E. Marshall, Inc.

The testimony concerning the manner in which the accident occurred is conflicting. According to plaintiff's version, he was lining up the gear immediately prior to the time when he was struck by the carrier. He did not hear any horn and had no warning of the carrier's approach until one wheel was on top of his foot. At the time he was struck he was near the corner of the remaining partial load of lumber at gear No. 2. The witness Janhune, who was standing be-

side plaintiff, was also struck but not injured by the carrier. He likewise testified that Doltar failed to blow the horn or give any other warning of his approach. Another witness who was at the scene of the accident testified that no warning of the carrier's approach was given. There was also testimony relating to Doltar's admission after the accident that the reason he failed to give any warning was that he did not see plaintiff in the path of the carrier.

Defendant Doltar testified that he knew the stevedores were on the dock for the purpose of unloading the lumber from the ship; that when he came to get the first load prior to 8:00 o'clock there were several men leaning against the load, "and when I came to the load nobody seemed to want to move so I had to get up and stand upon the carrier and holler down to them to get away from the load so I could get the lumber from the ship. That is the only reason I had to stop." The carrier was stopped 20 to 25 feet from the end of the load, and after making sure that no men were in the path of the machine Doltar continued on his course, picked up the first pile of lumber and took it away. As he returned for the second load after 8:00 o'clock he again observed several men around that pile of lumber. The carrier was then about 75 feet from the load, from which point, according to Doltar's testimony, he blew his horn continuously until he reached a point about 8 or 10 feet from the load, but did not stop and shout at the men as he had done prior to picking up the first load. He observed the men walking away from the load but testified that just before the accident he believed that he saw one fellow who had his back turned. Doltar did not see plaintiff when he started to go over the load and did not know that the carrier had struck plaintiff until after he had stopped "because somebody hollered." He stated that on many occasions when he was operating the carrier in front of ships or alongside of ships when the men were working cargo or getting ready to work cargo he stopped the carrier and shouted at the men to get out of the way.

 It is first urged that there is no evidence to show that defendants owed any duty of care toward plaintiff, or that if such duty did exist there was no proof of any violation thereof. In other words, defendants contend that plaintiff's evidence established only that the accident happened but failed to establish that it resulted from any negligence

on the part of defendants. Plaintiff, being on the dock at the express invitation of John E. Marshall, Inc., for the purpose of performing services for such defendant, was an invitee and as such defendants owed him the duty to exercise ordinary care in the operation of the lumber carrier. (*Yamauchi* v. *O'Neill*, 38 Cal. App. (2d) 703 [102 Pac. (2d) 365]; *Wooll* v. *J. S. Shea Co.*, 214 Cal. 302 [5 Pac. (2d) 421].) ■ The evidence being conflicting in many respects, it was the duty of the jury to weigh the evidence and resolve the conflict, and on appeal it must be presumed that the evidence which supports the verdict was accepted by the jury as being true. ■ Viewing the evidence most favorably to the plaintiff, we cannot say that the verdict is without support. The record discloses that Doltar knew that plaintiff and other stevedores were on the dock for the purpose of unloading the ship; that under such circumstances he found it necessary on many occasions to stop his carrier and shout a warning to the men before proceeding to pick up a load of lumber; and that on the particular morning in question he had found it advisable to stop his carrier and shout a warning to several men before picking up the first load of lumber, but had not done so when returning to pick up the second load although he observed several men in the path of the vehicle. Furthermore, there was substantial testimony that at the time of the accident plaintiff was actively engaged in carrying out the duties for which he had been employed; that neither plaintiff nor any of the other men near the pile of lumber was aware of the approach of the carrier, and that defendant Doltar did not sound his horn at any time or give any other warning as he approached the pile of lumber. That such conduct constitutes active negligence is clear.

The case of *Yamauchi* v. *O'Neill, supra,* presents a very similar situation and it was there held at page 707 that " . . . there can be no doubt whatever that the negligent operation of a moving vehicle in a place where the operator has good reason to expect the presence of licensees constitutes active negligence as distinguished from passive negligence. . . . " In that case the plaintiff was walking in a private driveway when she was run over without warning by the defendant's truck which was backing out of the driveway. Such driveway was commonly used by pedestrians going to and from

a certain store. The driver of the truck looked back on the left side of the truck but not on the right where plaintiff was walking and did not sound his horn or give any warning to persons who might be in the path of the truck. It is pointed out that whether the plaintiff be considered as a licensee or an invitee, the defendants owed her the duty, in either event, not to injure her by such active negligence. In the instant case it will be noted that not only did defendant Doltar have good reason to expect the presence of invitees but he actually knew of their presence in the path of his machine.

Another case which is closely analogous is *Lucas* v. *Walker*, 22 Cal. App. 296 [134 Pac. 374, 379]. There the plaintiff, who was employed by the company which was installing elevators in a new building, was at work in an elevator shaft when he was struck and injured by the movement of the elevator without warning. An employee of the defendant, the contractor who was erecting the building, moved the elevator suddenly without warning although he knew that the plaintiff was at work in the shaft. In holding the defendants liable the court observes at page 303 concerning the conduct of the elevator operator: "As such operator it was his duty to so operate the elevator as to avoid injuring any of such workmen while they were so employed. Knowing that plaintiff was lawfully at work in the elevator shaft, the plainest dictates of care required that he should give him warning before moving the elevator car. . . . "

It is further claimed by defendant that plaintiff was guilty of contributory negligence as a matter of law. *Warnke* v. *Griffith Co.*, 133 Cal. App. 481 [24 Pac. (2d) 583], the case principally relied upon by defendants, is to be distinguished on its facts. There a city street was being widened and it became necessary to remove certain electric light poles. Appellant was employed as a lineman's helper, it being his duty to remain on the ground near the pole on which the linemen were working and raise or lower materials to them by means of a pulley and hand line suspended from a cross beam on the pole. Respondent Griffith Company was the contractor engaged in widening the street. In order to bring materials to a cement mixer used by the contractor it was necessary for his trucks to back up to the mixer. In doing this the trucks followed a fixed route marked by ruts in the dirt, backing in on an average of one every four or five minutes. Appellant

knew of the route followed by the trucks and also was aware of the frequency with which they came. Notwithstanding this knowledge, he stationed himself in the path of the backing trucks and watched the linemen at work on a near-by pole but failed to maintain a lookout for approaching trucks. While in that position he was struck by a truck, receiving the injuries for which recovery was sought. The driver of the truck was unable to see appellant as he backed toward the mixer. In holding that appellant was not entitled to recover because of his contributory negligence, the court states at page 409: "Appellant could just as well have watched the lineman tying the load on the line from a safe position. He was certainly not performing any part of the duty required of him by watching the lineman perform his duty, and if he had glanced occasionally in the direction from which danger approached him, until the lineman gave the signal to lower the fuse-box which it is evident he was waiting for, the deplorable accident could not have happened." The dissimilarity of the facts of that case and the present case is apparent. Here the lumber carrier followed no fixed path but could go anywhere on the dock and pick up any of the loads of lumber scattered about the dock. Doltar actually saw three men, one of whom was plaintiff, standing in the path of the lumber carrier. In standing where he was plaintiff was performing part of the duty required of him. Under such circumstances defendants' assertion that plaintiff was guilty of contributory negligence as a matter of law cannot be sustained. ■ The question was properly submitted to the jury under appropriate instructions and the implied finding that plaintiff was free of contributory negligence, based upon conflicting testimony, may not be disturbed on appeal, there being substantial evidence to support such finding. The remaining cases cited by appellant are not in point.

■■ During the course of the trial plaintiff was permitted to testify over objection that during his eight years of work on the docks as a stevedore it was the custom of the operators to blow the horn of the lumber carriers when they were about 25 feet away from any men working on the dock. The contention of defendants that the court committed prejudicial error in permitting such testimony as to custom cannot be sustained. Where the issue is one of negligence in the performance or failure to perform some act,

it is clear that evidence of the ordinary practice and custom which is generally followed in the performance of such act under the same or similar circumstances is competent. (*Thomas* v. *Southern Pac. Co.,* 116 Cal. App. 126 [2 Pac. (2d) 544]; *Hennesey* v. *Bingham,* 125 Cal. 627 [58 Pac. 200].) In a recent case the plaintiff, a high school student, sought to recover for injuries received in an automobile mechanics class. Evidence as to custom was admitted and on appeal the same contention that is here made was raised by appellant. In disposing of such contention the court states: "We cannot sustain the claim of appellants that the reception of this evidence was prejudicially erroneous. In the first place, testimony as to the general custom and practice of other auto shops in schools was competent on the question of care and diligence exercised by those charged with a lack thereof in the instant case." (*Perumean* v. *Wills,* 8 Cal. (2d) 578, 582 [67 Pac. (2d) 96].)

██ It is next asserted that the jury was not instructed that contributory negligence "no matter how slight in character" would bar recovery, and that the refusal of the court to give a requested instruction couched in such terms was error. No cases are cited to the effect that the refusal to give an instruction in that precise language is error. We know of no rule requiring a trial court to instruct a jury in any particular language or phraseology requested by a party if the subject matter of the requested instruction is fully and fairly covered in other instructions given to the jury. In other instructions the jurors were informed that if they found that plaintiff was negligent and such negligence contributed "in some degree" or "in any degree" to the happening of the accident it would bar recovery. No error in the use of such terms is pointed out. We conclude therefore that the jury was fully and correctly instructed on the subject and that the refusal of the court to give the requested instruction was not error.

██ The further claim is made that the court erred in refusing a requested instruction to the effect that in determining whether or not plaintiff was guilty of contributory negligence the jury was to consider the nature and character of the place where the accident happened and the familiarity of plaintiff with the conditions and manner in which operations were carried on. We see no error in the court's action,

for in several instructions dealing with the general subject of negligence the jury was clearly informed that in determining whether there was negligence the conduct in question must be considered in the light of all the surrounding circumstances. This adequately covered the subject matter of the requested instruction.

The refusal of the court to give a requested instruction relative to unavoidable accident is next assigned as error. The instruction was properly refused, for there was no evidence which would have warranted the jury in making such a finding had they been so instructed. (*Riley* v. *Berkeley Motors, Inc.*, 1 Cal. App. (2d) 217 [36 Pac. (2d) 398].)

In an effort to prove the amount of plaintiff's earnings prior to the accident, defendants produced a witness who was the auditor for the Waterfront Employers' Association, an association of the stevedoring steamship companies operating in the Los Angeles and Long Beach harbors. Plaintiff had testified that from January 1, 1938, to the date of the accident all of his work had been obtained through the association, which was in the nature of a hiring hall. The auditor testified that the books of the association showed the amount of money received by plaintiff from his various employers during that period, and that the information contained in such books was obtained from the payrolls of the various stevedoring companies which were turned into his office and were under his control. It further appeared that the auditor was not employed by Sudden & Christensen, plaintiff's employer at the time of the accident, nor by any other employer of plaintiff. The books kept by the auditor did not include payroll data of all employers of stevedores and included no Sudden & Christensen payrolls. The witness was then asked if his records showed the amount of pay received by plaintiff during the month of January, 1938. Plaintiff's objection to the admissibility of such testimony was sustained, the court's ruling now being assigned as error.

The claim that such evidence was admissible under the exception to the hearsay rule which permits proof of book entries made in the regular course of business is without merit. Before such evidence may be admitted it must be proved that such books are books of account kept in the regular course of business; that the business is of a character in which it is proper or customary to keep such books; that the entries in

such books are either original entries or the first permanent entries of the transaction; and that the person making such entries had personal knowledge of the transactions or obtained such knowledge from a report regularly made to him by some other person employed in the business whose duty it was to make the report in the regular course of business. (*Kains* v. *First Nat. Bank,* 30 Cal. App. (2d) 447 [86 Pac. (2d) 935].) In the present case there is no evidence that it was either proper or customary for the association to keep payroll records of persons, such as plaintiff, who were not actually employed by it. Nor does it appear that the books in question contained either original entries or the first permanent entries. Finally, the entries were made by the auditor who had no personal knowledge of the transactions represented thereby, from reports submitted to him by persons not employed by the association. It is thus evident that defendants failed to lay a proper foundation for the admission of such testimony.

It is next contended by defendants that the verdict for $13,500 damages is excessive. In passing upon such contention we must consider only the testimony which is most favorable to plaintiff, disregarding the conflicting testimony offered by defendants. (*Gackstetter* v. *Market Street Ry. Co.,* 10 Cal. App. (2d) 713 [52 Pac. (2d) 998].) Plaintiff at the time of the accident was about 35 years of age and had for eight years prior thereto been working steadily as a stevedore. Before becoming a stevedore he had worked on various ships as a traveling longshoreman. His education terminated with the fifth grade of grammar school. As a result of the accident plaintiff received the following injuries: Fracture of the tibia, resulting in a flattened, abnormal ankle, a severe, crushing injury to the soft tissues, ligaments and blood vessels in the ankle, resulting in a permanent injury to the venous return of the circulatory system which causes swelling of the foot and ankle and restriction of motion in the ankle; the synovial fluid has formed a sack in the ankle joint, thus causing the joint to become arthritic; there is a lack of normal calcium or salt deposits in the bones of the foot and severe sprain of the back and knee. Because of such injuries plaintiff suffered and at the time of trial continued to suffer severe pain in his foot, ankle, leg and back, and his foot and ankle swell under any sort of

tension or stress. Such condition will be permanent and plaintiff will be unable to perform his usual and ordinary work, it having been shown that a stevedore must be agile and quick in order to avoid being injured. Plaintiff was confined to the hospital for three weeks or a month and was required to use crutches for six months after the accident, thereafter using a cane. When he attempted to go back to work he could not do so because of the pain and swelling in his foot and ankle. From May 6, 1939, to the time of trial, December 4, 1939, plaintiff was able to work not more than nine hours a week. His average earnings prior to the accident had been $2,200 per year. Medical and hospital expenses amounted to $791.61. From such evidence, the jury would have been warranted in finding that plaintiff is permanently disabled and as a result unable to perform the heavy labor for which he was trained and fitted, and that his earning capacity has been permanently and materially decreased.

■ The question of excessive damages is primarily directed to the trial court. Since defendants' motion for new trial was denied, it is manifest that the trial judge who heard the evidence and observed the witnesses found no impropriety in allowing the verdict to stand. The power of appellate courts to reverse a judgment because of excessive damages exists only when the facts are such as to suggest that the verdict was the result of passion, prejudice or corruption on the part of the jury. (*Adams* v. *Warren*, 11 Cal. App. (2d) 344 [53 Pac. (2d) 780].) We have found nothing in the record which suggests passion, prejudice or corruption on the part of the jury in arriving at its verdict. The evidence discloses substantial injuries, permanent in character, considerable pain and suffering, which is likewise permanent, and a decrease in plaintiff's earning capacity.

■ After having introduced evidence that plaintiff's average yearly earning capacity was $2,200, plaintiff introduced further evidence that he had received disability benefit payments of $1911.22 from the insurance carrier for his employer since the date of the accident. No objection to the admission of this testimony was offered. Defendants' subsequent motion to strike from the record all testimony relating to plaintiff's earning capacity was voluntarily withdrawn without a ruling by the court. Relying upon section 3855 of the Labor Code, defendants now contend that the evidence

as to loss of earning capacity may not be considered in support of the verdict; that the only evidence which is proper is that relating to payment of disability benefits. Section 3855 provides essentially that where an employee sues a third person, evidence of the amount of disability indemnity paid by the employer or evidence of loss of earning capacity by the employee shall be admissible, but not both. There is no merit in defendants' contention, for it is settled that an objection to the admission of testimony may not be made for the first time on appeal.

It is unnecessary to consider the remaining contentions relating to misconduct on the part of plaintiff's counsel, for no request was made of the trial court to instruct the jury to disregard the matters relating thereto. Under such circumstances the complaining party must be deemed to have waived any objection to such conduct. (*Kershaw* v. *Tilbury,* 214 Cal. 679 [8 Pac. (2d) 109]; *Olsen* v. *Standard Oil Co.,* 188 Cal. 20 [204 Pac. 393].)

Judgment affirmed.

A petition for a rehearing was denied on January 28, 1941, and appellant's petition for a hearing by the Supreme Court was denied on February 24, 1941.