[Civ. No. 13364. Second Dist., Div. Three. July 24, 1942.]

DONALD L. MILTON, Respondent, v. LOS ANGELES MOTOR COACH COMPANY (an Unincorporated Agency) et al., Appellants.

568

Frank Karr, C. W. Cornell and O. O. Collins for Appellants.

Freston & Files, Gordon L. Files, August J. O'Connor and George J. Hider for Respondent.

SHINN, J.—At 9:15 p. m. December 14, 1939, plaintiff, a commercial photographer, was standing in Wilshire Boulevard in Beverly Hills three or four feet northerly of an automobile parked against the south curb and about seventy-five feet easterly from the intersection of Wilshire and Bedford; he had a black hood over his head and was viewing through his camera, which rested on a tripod placed against the automobile, a store window on the south side of the boulevard, which was the subject of a picture he intended to take. There was testimony to the effect that he had with him as a temporary assistant a young man named Kirst, who stood in the street eight or ten feet westerly of the location of the

camera, using a flashlight in directing traffic away from plaintiff. While so occupied plaintiff was struck by a motor coach moving easterly, operated by defendant Los Angeles Motor Coach Company, driven by its employee Koonse. In an action against the motor coach company and its driver plaintiff recovered judgment after jury trial and defendants appeal. Errors are assigned in the giving of some of the instructions, in the refusal of others and in the admission of evidence.

█ Plaintiff testified that he had been doing commercial photography since 1914 and had taken at least 500 pictures in Beverly Hills. Over defendants' objection he testified as follows: "Q.: Mr. Milton, in your experience as a photographer do you know whether the placing of a camera in the street as your camera was placed on the night of the accident was the usual and customary practice? MR. COLLINS: Which is objected to as incompetent, irrelevant and immaterial for the reason there can be no usual practice of committing a trespass on a street. . . . THE COURT: So far as the question of nuisance is concerned, or obstruction, I don't see there is anything to the objection. On the question as to whether the custom is admissible that would be a different question. . . . BY MR. FILES (continuing): Q. I will ask this question. From your experience as a commercial photographer in Beverly Hills do you know whether or not there was a custom in 1939 in the performance of the work of commercial photography to place the camera in the street in the taking of such pictures? A. There was. MR. COLLINS: I move that the answer be stricken. Same objection. It is incompetent, irrelevant and immaterial. No proper foundation has been laid and it calls for a conclusion of the witness. THE COURT: I have forgotten for the moment whether there was testimony prior to the recess that he had knowledge of the custom. MR. COLLINS: All he has testified to was what he did himself. MR. FILES: The question I am asking is whether he knows if there was such a custom. THE COURT: Overruled. BY MR. FILES (continuing): Q. What is your answer? A. Yes, sir. Q. What was the custom in Beverly Hills at that time with respect to the presence of the camera temporarily in the street for the taking of commercial photographs? A. If I had to take a picture of a building I had to place the camera wherever it was necessary for me to place it to take this photograph whether it was in the center or the

edge. Naturally, we never went out to the center unless we had to, but we had to take the picture from where it was necessary to take it from according to our lens we were using. Q. Was that the custom in Beverly Hills at that time? A. Yes, sir. MR. COLLINS: We object to that on the ground no proper foundation has been laid. THE COURT: Overruled.''

Even though it might be proper in some situations to show the existence of customary practices or conditions which were known to the parties or were of such notoriety as to be presumptively within their knowledge and the existence of which would reasonably have influenced their conduct, we have no such situation here nor anything approaching it.

No evidence was offered to prove knowledge on the part of either defendant of the alleged custom and the evidence received fell far short of establishing the existence of a condition so common and notorious as to warrant an inference that it was known to the defendants. In the latter connection conspicuous deficiencies in the proof are to be noted. Beverly Hills is a large city with extensive residential areas. It has a business section traversed for a number of blocks by Wilshire Boulevard, a busy, congested traffic artery. From the testimony of plaintiff it cannot be ascertained whether the alleged custom was a general one, commonly and extensively followed by the profession, or only a practice that was resorted to upon rare and exceptional occasions, whether it was followed in the residential districts or in the heavy traffic of Wilshire Boulevard, whether it was the custom of photographers using the streets to hold their cameras in their hands and to be prepared to move out of danger or to use tripods with their heads covered with black cloths, whether it was customary to take pictures from the streets after dark as well as in the daytime and what, if any, precautions were usually taken to prevent injuries by automobiles. And in addition to this, it is somewhat difficult to see that plaintiff was testifying to anything more than what his own practices were.

Regardless of any question as to the sufficiency of the evidence of custom, it was inadmissible.

The law is well settled that mere custom or usage cannot make due care out of conduct that is in fact negligence under circumstances disclosed by the evidence. (*Phoenix Assur. Co.* v. *Texas Holding Co.* (1927), 81 Cal. App. 61, 74 [252 Pac. 1082]; *Rudd* v. *Byrnes* (1909), 156 Cal. 636, 642 [105 Pac. 957, 20 Ann. Cas. 124]; *Anstead* v. *Pacific Gas & Elec. Co.* (1928), 203 Cal. 634, 638 [265 Pac. 487]; *Perry* v. *Angelus*

*Hospital Association* (1916), 172 Cal. 311, 315 [156 Pac. 449]; *Robinet* v. *Hawks* (1927), 200 Cal. 265, 273 [252 Pac. 1045]; *Carroll* v. *Central Counties Gas Co.* (1929), 96 Cal. App. 161, 165 [273 Pac. 875, 274 Pac. 594].)

The introduction of the evidence as to custom is sought to be justified upon the ground that the use of the streets in a customary and lawful manner without unlawfully obstructing their use by others does not constitute a public nuisance under section 370 of the Penal Code, which was one ground of defendants' objection, and that therefore plaintiff was not a trespasser or guilty of negligence as a matter of law, citing *Fisher* v. *Los Angeles Pac. Co.* (1913), 21 Cal. App. 677, 682 [132 Pac. 767], and *Katz* v. *Helbing* (1928), 205 Cal. 629, 633 [271 Pac. 1062, 62 A. L. R. 825]. But as appears from the portions of the record quoted above, before the evidence of custom was admitted, the court had ruled against defendants' objections to the evidence of custom upon the stated ground that "there can be no usual practice of committing a trespass on a street" the court stating, "So far as the question of nuisance is concerned, or obstruction, I don't see there is anything to the objection."

Plaintiff availed himself of the evidence not as supporting his position upon the strictly legal question whether he was committing a trespass or maintaining a nuisance but as establishing a fact having a vital bearing upon the issues of negligence and contributory negligence. This was accomplished by means of an instruction given at plaintiff's request, reading as follows: "While sidewalks are for the use of pedestrians and not at all for the use of automobiles, busses, or other vehicles, a street, on the other hand, is for the use of automobiles, busses, vehicles, pedestrians, workmen and others having need for using the street. However, even though the street is for the use of both vehicles and persons on foot, that fact does not give license to anyone, whether operating a vehicle or on foot, to fail to use ordinary care for his own safety or for the safety of the other. The law imposes on each the duty of ordinary care. That duty of care is that care which persons of ordinary prudence would exercise under similar circumstances; that is to say, the circumstances as they arose in this case, as disclosed by the evidence. When a person is engaged in work of a customary nature, that requires him to be in a portion of the street for a temporary period, he occupies a somewhat different category from that

of a pedestrian. The law recognizes, for instance, that what would be ordinary care for one engaged in the performance of work on the street, would not necessarily be the ordinary care that a pedestrian merely crossing the street should exercise. While engaged in work, one is not required to maintain a constant watch for traffic on the street, but such a watch, or regard thereto, or protection therefrom, as under the circumstances a reasonably average prudent person would have exercised while engaged in the work which the plaintiff was doing.''

The principle of law thus declared is well recognized as applying to those whose work has to be done in the streets. It was stated in *State etc. Ins. Fund* v. *Scamell* (1925), 73 Cal. App. 285 [238 Pac. 780], where the plaintiff, employed as a street sweeper, had been run down by an automobile, as follows (page 290) : ''One using a street traveled by automobiles, in the absence of warning, is not required to constantly keep a sharp lookout from behind to see whether a machine is approaching [citing cases] ; and his failure so to do does not constitute negligence as a matter of law. [Citing cases.] Much less so is a laborer whose duties require him to be in the street in the performance of his occupation. Pedestrians are not continuously in the street and their attention is devoted to a safe passage, while the attention of a street laborer must be, to a considerable extent devoted to his task. There can be and there is no duty imposed on a workman to be constantly on the lookout for motor vehicles; on the contrary, it is the duty of drivers of vehicles to observe the street laborers and to avoid contact with them. It is not negligence as a matter of law for a workman to keep his mind on his work or to fail to look and listen for approaching vehicles. He may properly assume that the automobilist will not be guilty of negligence in running him down without warning. (*King* v. *Green,* 7 Cal. App. 473 [94 Pac. 777]) ; and especially is this true where he remains within a space established for the parking of cars. (*Medlin* v. *Spazier,* 23 Cal. App. 242 [137 Pac. 1078].)'' Other similar cases are *Milosevich* v. *Pacific Electric Ry. Co.* (1924), 68 Cal. App. 662 [230 Pac. 15] ; *Driscoll* v. *California St. Cable R. Co.* (1926), 80 Cal. App. 208 [250 Pac. 1062] ; *Woods* v. *Wisdom* (1933), 133 Cal. App. 694 [24 P. (2d) 863], and *Mecham* v. *Crump* (1934), 137 Cal. App. 200 [30 P. (2d) 568], in all of which injuries had been sustained by workmen engaged in the performance of labor on public streets either as em-

ployees of cities, street railway companies, gas and electric companies or construction companies engaged in public work.

■ Plaintiff's testimony that it was customary for photographers in Beverly Hills to use the streets in the taking of pictures and that it was necessary for him to place his camera in the street in order to get the particular picture he wished to take with the lens he was using, was evidently intended to bring him within the rule stated in the instruction, but that rule cannot be extended to protect photographers or others who may occasionally use the streets in the pursuit of their occupations if they do so from choice and not from necessity. In *Carlsen* v. *Diehl* (1922), 57 Cal. App. 731, 737 [208 Pac. 150], it was held that a truck driver who was loading his truck in a hazardous position alongside a driveway and who was not forced to remain in that particular place as a matter of duty, although he had a right to be there, was not to be classed with laborers engaged in street work; an instruction in less objectionable form than the one in the instant case was held to be erroneous.

There was no proper factual basis for the application of a rule which affords an unusual measure of protection to those whose work cannot be done except in the streets. Reduced to its essentials the testimony was that if plaintiff wished to take a particular picture, using a particular lens, he had to stand in the street in order to get the desired result. There is nothing in this testimony to suggest, much less to prove, that substantially the same result could not have been reached by the use of a different lens, with the camera placed in another location. While it was shown to be desirable, in some cases, to take a picture from a location in a street, it was not shown to be necessary to do so in order to carry on the business of commercial photography.

■ A careful study of the instruction convinces us that it would naturally have been understood by the jury as warranting them in assuming, upon the basis of the evidence of custom, that plaintiff was "engaged in work of a customary nature that require(d) him to be in a portion of the street for a temporary period," thus placing him in the category of workers in the street whose rights and duties are measured by a rule of conduct which fits their own peculiar situation. The jury was told in substance that it was not necessary for plaintiff in the work he was doing to maintain a constant watch for traffic on the street, and the instruction went far to place upon defendants responsibility for the accident.

It is not contended that plaintiff himself was paying any attention to the traffic; obviously he was in no position to do so. There was a sharp conflict in the evidence as to whether the witness Kirst was directing traffic around plaintiff with a flash light. Two eyewitnesses testified that no one was standing westerly of plaintiff, that a young man was standing toward the east but that there was no one using a flash light. An officer of the State Highway Patrol, in making an immediate investigation of the accident, talked with the witness Kirst and testified that the latter had stated at the time that he had not been using a flash light. This officer and another talked at that time with a spectator, one Nagle, who testified at the trial that Kirst had used a flash light. The officers testified that Nagle had told them that Kirst was not using a flash light. Defendant Koonse denied having seen Kirst before the accident. In view of the conflicting testimony as to what precautions plaintiff did take to avoid accidental injury it is impossible to know to what extent the instruction influenced the verdict. It placed plaintiff in the position of street workers whom every motorist must expect to find on the streets and highways and thus placed defendants under the same duty to anticipate plaintiff's presence in the street as they were under to anticipate the presence of highway workers. The dissimilarity of the two situations that were treated as essentially the same is obvious. If the rule stated in the instruction was applicable to plaintiff's case it would be applicable to anyone who found it desirable or advantageous to do some of his work in the streets.

We do not think it can be said that the jury could not have believed from all of the evidence in the case that plaintiff, while engaged in taking pictures at night, on a busy highway, with a black cloth over his head, was in at least as great danger of injury as a pedestrian usually is when crossing the highway. The jury also could have believed that ordinary prudence would have demanded that a constant watch for vehicles be maintained by plaintiff or someone acting for him, that neither plaintiff nor his alleged helper and agent, Kirst, maintained such watch, and that responsibility for the accident rested upon plaintiff and not upon defendants. Plaintiff was not entitled to the instruction, upon the showing made as to his presence in the street, either as it applied to his own duty to use ordinary care or as it applied to the duty of defendants to anticipate his presence in the street. The principle of law stated in the instruction, insofar as it re-

lates to the conduct of those who are obliged to make temporary use of the streets for purposes other than travel, is, as we have stated, well established, and the rule of conduct which it declares is so manifestly right and salutary as to admit of no modification or relaxation in situations where it applies. Those situations are necessarily numerous and we undertake to place no limitations upon the application of the rule except with relation to the facts of the case before us. The factual foundation which called forth the instruction was not only insufficient but its corner stone was the improper testimony as to custom.

The vice of the instruction was not removed nor was the error in receipt of evidence of custom cured by general statements in the instruction or by a further instruction which the court gave, reading as follows: ''The Court has permitted testimony to be given as to the custom and practice of photographers in Beverly Hills where the accident occurred in respect to taking pictures from the street where it is necessary to do so in order to get a picture of an entire building. This evidence was not received as showing that the plaintiff was or was not negligent. It was received simply as an evidential matter of fact, if it be a fact, which is for you to determine, and in order that you might have information as to the custom and practice prevailing in Beverly Hills. The mere fact, if it be a fact, that the photographers in Beverly Hills operate in a certain manner or in the same manner is not proof that they do or do not operate in a proper manner. The standard for determining what is proper practice is to be ascertained by you by determining what an average reasonably prudent person would or would not have done under the circumstances as you find the circumstances to exist.'' This statement had to be read with the instruction we have quoted, which invaded the province of the jury in its statement that plaintiff would not have been negligent in failing to maintain a constant watch for approaching vehicles; it implied that defendants should have anticipated his presence in the street, and it again definitely linked the evidence of custom with the issues of negligence.

Defendants requested and the court declined to give an instruction reading as follows: ''Section 525 of the Vehicle Code of the State of California, in force and effect on the 14th day of December, 1939, reads in part as follows: 'Upon all roadways of sufficient width a vehicle shall be driven upon

the right half of, and as close as practicable to the right-hand curb or edge of, such roadways.' " In *Christiansen* v. *Hollings* (1941), 44 Cal. App. (2d) 332 [112 P. (2d) 723]; *Skulte* v. *Ahern* (1937), 22 Cal. App. (2d) 460 [71 P. (2d) 340], and *Casalegno* v. *Leonard* (1940), 40 Cal. App. (2) 575 [105 P. (2d) 125], it was held proper to instruct the jury as to the provisions of this section where negligence was charged consisting in part of a violation of its provisions. While we have a different case, we think it was error to refuse the instruction. We do not know that the members of the jury or some of them did not believe the bus driver to have been negligent in driving so close to the parked cars. The law should have been stated in order to remove any possible uncertainty in their minds as to the right and duty of the bus driver in that respect and also as to the duty of plaintiff in taking his station in the street to have in mind the fact that eastbound vehicles were required to travel as close as practicable to the southerly curb. Where an instruction as to the provisions of a statute would be helpful to the jury in deciding the issues in a negligence case it should be given, even though there is no charge of negligence involved, based upon alleged violation of the law.

■ Defendants offered an instruction in standard form on the doctrine of imminent peril which the court declined to give. We believe that this instruction also should have been given. Defendant Koonse, driver of the bus, testified that he was traveling easterly three or four feet from the parked cars; that he had stopped at Bedford and Wilshire and that the accident happened when he had traveled about seventy-five feet easterly from the intersection at a speed of between twenty and twenty-five miles per hour; that he saw plaintiff's tripod and camera just as a car in front of him traveling easterly swerved around plaintiff to the left; that he saw plaintiff looking through the camera but that he did not see a man with a flashlight; that the bus was fifteen or twenty feet to the rear of the car ahead when it swerved to. the left. He estimated that plaintiff was about fifteen feet away from the front end of the bus when he first saw him and testified that he swung his bus to the left and tried to put on the brakes as soon as he saw plaintiff. Plaintiff's witness Kirst, who had testified to having directed traffic away from plaintiff by use of a flash light, testified that an automobile preceded the bus; that he directed it around plaintiff; that he

saw the bus approaching and that the bus driver wasn't looking ahead; that he, Kirst, jumped out of the way, yelled at plaintiff just before the bus hit him and that the bus was traveling about fifteen feet behind the car ahead of it. He further testified that the bus did not change its direction from the time it crossed Bedford to the time it struck plaintiff; that he tried to direct the bus around plaintiff until it was within about three feet of him, when he jumped aside, and that the speed of the bus was not decreased up to the time of the accident. There was also testimony that when the car swerved out, the bus was about forty-five feet from where plaintiff was standing. The jury could well have believed that if the bus driver was negligent his negligence occurred in the interval between the turning out of the car and the contact of the bus with plaintiff. Plaintiff contends that the instruction should not have been given because the bus driver did not see him until it was too late to avoid the accident and that therefore the rule would have been inapplicable to the case on the theory that the driver was not confronted with a situation of peril until he actually saw plaintiff. This is too narrow a view of the situation. As long as the car ahead of the bus was proceeding in an uninterrupted course and at an unvarying speed, and in the absence of anything to alarm him, the bus driver would have been justified in assuming that the highway ahead of the car was clear. The swerving of the car to the left might have warned him that there was some obstruction in the street which caused the car to turn. We think it could reasonably have appeared to the jury that a situation of imminent peril arose when the car which had been obstructing the view of the bus driver turned aside so as to afford him a view of the street ahead. The conduct of the driver should have been considered by the jury with an understanding of the imminent peril doctrine and we cannot say that the jury, knowing the rule, would not have found that it had application to the facts proved and that the bus driver was not negligent. The failure to give this instruction, alone, would warrant a reversal of the judgment.

Several instructions were requested by defendants to the effect that plaintiff was committing a nuisance in using the street as he did and was therefore guilty of negligence which would bar recovery. No authority is cited in support of the argument except a single case from another state which

turned upon the violation of a city ordinance and which obviously is not in point here. The court properly declined to give the requested instructions. Section 370 of the Penal Code, insofar as its provisions are pertinent, provides that anything which unlawfully obstructs the use of a public street is a public nuisance. Plaintiff's temporary use of the street was not a violation of any law to which our attention has been called nor did it amount to negligence as a matter of law. (*Fisher* v. *Los Angeles Pac. Co., supra* (1913), 21 Cal. App. 677, 682; *Katz* v. *Helbing, supra* (1928), 205 Cal. 629, 633; *Wright* v. *Salzberger & Son* (1923), 63 Cal. App. 450, 452 [218 Pac. 785].)

The court did not err in refusing defendants' instruction on negligence calling attention to the darkness of the night and the color of plaintiff's clothes and in effect stating that it would have been difficult under the circumstances for the bus driver to have seen plaintiff.

In view of the conflicting evidence upon material issues and the relevancy of the legal principles stated in the instructions which were refused, we are unable to say that the result would not have been different had the trial been free from the errors we have discussed.

The judgment is reversed.

Wood (Parker), J., concurred.

Schauer, P. J., concurred in the judgment.

Respondent's petition for a hearing by the Supreme Court was denied September 22, 1942. Carter, J., and Traynor, J., voted for a hearing.