[Civ. No. 12295. First Dist., Div. One. June 28, 1943.]

CARL R. SCOTT, Respondent, v. P. E. GALLOT, JR., et al., Appellants.

Myron Harris, Wm. H. Older, John Jewett Earle and Appelbaum & Mitchell for Appellants.

James R. Agee and Alfred F. Taddeucci for Respondent.

KNIGHT, J.—Defendants appeal from an order granting a motion for new trial, after verdict and judgment in their favor, in an action brought by plaintiff to recover damages for personal injuries. The appeals are presented by defendants on separate briefs, but all parties are agreed that the main question involved relates to the relevancy of certain evidence as to custom and practice, which the trial court ordered stricken out, and thereupon instructed the jury that it should not consider the same for any purpose in determining the issues of the case.

The accident occurred under the following circumstances: Plaintiff was employed in the plant of the Moore Dry Dock Company, and was engaged in building a dust protector, a large and heavy piece of equipment, which was being built in the boiler shop. He and two assistants were occupied in undertaking to bolt a metal strap to this device preparatory to welding. The two helpers were alongside of plaintiff holding the strap in position, and plaintiff was down on his right knee, with his leg extended behind him, bending over in order to get underneath some ''I'' beams which were 18 or 20 inches above the level of the floor. Plaintiff and his helpers had been in this position ten or twelve minutes when the accident occurred. The defendant Porter, an employee of the defendant Gallot, had parked a heavy delivery truck about two feet away, and it had been there about an hour

while Porter unloaded from the truck a number of oxygen tanks and reloaded it with empty containers. While plaintiff was in the above described position, his foot was under the body of the truck, directly ahead of and in the path of the rear wheel; and when Porter completed the reloading of the truck, he climbed into the driver's seat, started the engine, claimed he got a signal to proceed from a man standing at the shop door, and pulled forward, causing the right rear wheel to run over plaintiff's foot. Admittedly Porter did not sound his horn or give any warning of his intention to move the truck. He admitted that during the time he was unloading he saw the men working on the dust protector, but he testified that about 30 seconds previous to starting up he had observed conditions on the right side of the truck and had seen no men in the immediate vicinity thereof.

On cross-examination by defendant Gallot's counsel plaintiff testified as follows: ''Q. You knew that if the truck started up you were in a mighty dangerous spot, didn't you? A. Well, yes, if he started up I would be in a dangerous spot. . . . The Court: Here is the point—let's take it back again: You knew when you started to work under the body of the truck that you were assuming a dangerous position? A. Well, yes. Q. What precautions did you take to protect yourself against that danger? A. I believe in the—the way I could answer that question is that the—as a rule, they always notify the men before they pull out, some way or another. Mr. Harris [counsel for defendant Gallot]: Q. The question was, what did you do toward your own safety, sir, to protect yourself, if anything? The Court: He has answered the question. He said, in effect, he assumed he would get a warning before the truck would move. He didn't do anything else. . . . A. That is right.'' During the same cross-examination plaintiff's counsel in the course of an objection to a question put to plaintiff by Gallot's attorney said, ''He testified that he assumed he would get a warning, that was the custom and practice.'' Later, on cross-examination by defendant Porter's attorney, plaintiff testified as follows: ''Q. Now, you said that you usually expected a warning, that there was a warning custom of some kind. Was that a warning by horn or what? A. Well, it was a warning by a horn or by the truck driver. . . . The Court: Had Mr. Porter ever warned you before the accident . . . A. Yes . . . Mr. Mitchell [coun-

sel for defendant Porter] : Q. Had other people warned you too? A. Yes. Q. Other truck drivers? A. Other truck drivers had warned me. Q. You had been warned on many occasions? A. Oh, many times when we were working around they would come along and say, 'Will you please move out of the way now, we are going.' . . . Q. A month and a half before this accident you say that Mr. Porter warned you to look out? A. Yes . . . Q. What was that occasion? Tell us about it. A. I was standing in his road that day talking to another fellow and I was in his way. Q. He was pulling out? A. Yes, he was ready to leave there. Q. Did he sound the horn? A. No. He came around in front of the truck and said, 'Out of the way, please, I am going out.' . . . Q. Any other occasion when Mr. Porter had to warn you to get out of the way? A. Not that I remember of, that one time was all.'' On redirect examination of plaintiff the following occurred: ''Q. Now, as I understand, the custom and practice of all these trucks coming in here would be that if they were moved in any way—there wouldn't be—as close to the men, they wouldn't be—I am talking about the custom and practice—was that those truck drivers warned you before making any move with those trucks, is that right? A. Yes. Mr. Harris: I object to that as leading and suggestive and immaterial and ask that the answer go out. The Court: Overruled. Reframe your question. Mr. Agee [plaintiff's counsel] : In other words, bluntly, Mr. Scott, the custom and practice of the truck drivers who came in and out of the shop where you were working was to warn you before they moved? Mr. Harris: The same objection. A. Yes. The Court: The answer may stand.'' Thereafter testimony as to the custom of giving warning was also given by two other witnesses for plaintiff, Kiado and Dutrow, to which defendants' attorneys objected on the ground that the questions were immaterial and no proper foundation had been laid; and the objections were overruled. Toward the end of the trial a motion was made by defendant Porter's counsel to strike out the testimony of plaintiff, Kiado and Dutrow, given with regard to any custom or practice on the premises; and the court granted the motion and instructed the jury that the testimony so stricken out was not to be considered by them for any purpose.

It is plaintiff's contention that the stricken evidence

became relevant under the affirmative issue of contributory negligence raised by the answer to the complaint, and that therefore the trial court was justified in granting a new trial on that ground. We agree with this contention. The case of *Burke* v. *John E. Marshall, Inc.*, 42 Cal.App.2d 195 [108 P.2d 738] (hearing denied by Supreme Court) is in our opinion determinative of the question. There the plaintiff was employed as a stevedore to help discharge a cargo of lumber from a steamship which was alongside a dock. The dock was in the possession and under the control of the defendant, and the ship was owned by the plaintiff's employer. A lumber carrier, a four-wheeled vehicle which can be driven over a pile of lumber, pick it up and transport it elsewhere, struck plaintiff while plaintiff was engaged in his duties. The driver of the carrier testified that he blew his horn continuously until he reached a point about 8 or 10 feet from the load of lumber, where plaintiff was working, but plaintiff testified that he heard no warning of the carrier's approach until one wheel was on top of his foot. During the course of the trial plaintiff was permitted to testify over objection that during his eight years of work on the docks as a stevedore it was the custom of the operators to blow the horn of the lumber carriers when they were about 25 feet away from any men working on the dock. The reviewing court held: "The contention of defendants that the court committed prejudicial error in permitting such testimony as to custom cannot be sustained. Where the issue is one of negligence in the performance or failure to perform some act, it is clear that evidence of the ordinary practice and custom which is generally followed in the performance of such act under the same or similar circumstances is competent. *(Thomas* v. *Southern Pac. Co.*, 116 Cal.App 126 [2 P.2d 544]; *Hennesey* v. *Bingham*, 125 Cal.627 [58 P.200].)" The case of *Mace* v. *Watanabe*, 31 Cal.App. 2d 321 [87 P.2d 893], holds to the same effect.

 Defendants contend that it is only in cases where there are contractual relations between the plaintiff and defendant or a master and servant relationship involving the doctrine of assumption of risk that evidence of custom and practice is admissible, citing *Phoenix Assur. Co.* v. *Texas Holding Co.*, 81 Cal.App. 61 [252 P. 1082], and *Carroll* v. *Central Counties Gas Co.*, 96 Cal.App. 161 [273 P. 875], in support of this contention. However, those cases are not in point here. They

hold in effect that where such relationships do not exist evidence on the part of a defendant as to specific negligent practices of others cannot be admitted as showing an excuse for the negligent act of the *defendant;* in other words, they hold that in cases not involving those relationships the fact that others are in the habit of acting in the same negligent manner will not excuse a defendant's negligence—that if the doing of the thing is inherently *negligent* then it remains negligent despite the custom and practice of others to do the same thing. It is quite obvious, therefore, that those rules have no application to the present case, for here the plaintiff in refutation of the charge of contributory negligence relied on a custom which was a *safety* measure, not a custom which was negligent. Nor has the rule upon which plaintiff relies been limited to cases involving contractual relations or master and servant or assumption of risk, for neither *Burke* v. *John E. Marshall, Inc., supra,* nor *Mace* v. *Watanabe, supra,* wherein evidence of custom was held admissible, were such cases.

Defendants also cite the case of *Milton* v. *Los Angeles Motor Coach Co.,* 53 Cal.App.2d 566 [128 P.2d 178], but a mere glance at the factual situation there demonstrates that it is so entirely different from the one presented here as to be in no way here controlling. There a photographer was struck by a motor coach. It was at night time, during the month of December. He was standing out in Wilshire Boulevard, in Beverly Hills, "a busy, congested traffic artery," with a black hood over his head, behind his camera, which rested on a tripod and was trained on a store window; and over defendants' objections he was permitted to introduce evidence that it was customary for photographers to stand in the street. The judgment in his favor was reversed, and as to such evidence the court said, in part: "Even though it might be proper in some situations to show the existence of customary practices or conditions which were known to the parties or were of such notoriety as to be presumptively within their knowledge and the existence of which would reasonably have influenced their conduct, we have no such situation here nor anything approaching it."

Nor were defendants entitled to have the testimony stricken out because defendant Porter, the driver of the truck, testified that he had no knowledge that it was the custom and practice in the Moore Dry Dock plant to give warning of

the starting of trucks; for as shown by the record plaintiff did not rely upon a breach of custom to establish Porter's negligence. In this regard the record shows that Porter had been in this same shop "hundreds of times" before the accident; that he drove in regularly to make deliveries at least once or twice a week; and the theory of plaintiff's case was that Porter was guilty of negligence, not because of any breach of custom, but because he jumped into the parked truck which had been standing there an hour or so, and started off without giving any warning of any kind, after having seen plaintiff and others working in close proximity to the truck. Therefore, so far as the issue of contributory negligence was concerned, it was immaterial whether or not Porter had knowledge of the asserted custom.

■ Defendants make the further point that the stricken testimony was inadmissible because plaintiff did not plead custom or usage. The point is without merit. As shown by the case cited and relied upon by defendants *(Tharp* v. *San Joaquin Cotton Oil Co.,* 27 Cal.App.2d 554 [81 P.2d 443, 82 P.2d 21]), the rule contended for by defendants has reference to cases where the plaintiff's cause of action against the defendant is based upon the theory that defendant has violated some particular custom or usage. And it may be that such rule may be invoked also in a proper case by a plaintiff against a defendant whose defense of contributory negligence is based upon the theory that plaintiff has violated some particular custom or usage. But neither of those situations is here involved. ■ Stated another way, when a plaintiff files his complaint charging defendant with negligence he is not required to anticipate that the defense will be contributory negligence, and to plead facts to negative such charge.

■ In further support of the trial court's order granting a new trial plaintiff contends that the defendants proposed and the court gave an erroneous instruction. It contained the statement that "the plaintiff could not assume or act or rely on the assumption that he would not be injured by a moving truck." This same form of instruction has been before the reviewing courts on two previous occasions, first in the case of *Warnke* v. *Griffith Co.,* 133 Cal.App. 481 [24 P.2d 583], and again in the case of *Clarke* v. *Volpa Brothers,* 51 Cal.App. 2d 173 [124 P.2d 377]. In the former it was held that under the undisputed facts of that case the instruction was not erroneous and the judgment was affirmed; whereas in the

latter case it was held that the instruction was improper where, as in that case, the facts are in dispute as to whether the plaintiff did or did not have a right to assume that trucks would not be moving at the place where he received his injuries. In so holding the court said that in that state of the evidence the giving of the instruction in the form given in the Warnke case was an invasion of the province of the jury. It is our opinion that in the present case the question of whether or not plaintiff had the right to assume, act or rely upon the assumption that he would not be injured by the moving truck was one of fact for the determination of the jury, and that therefore if on retrial a similar instruction is offered, its wording should be modified accordingly.

In view of the conclusion reached on the question of the admissibility of the testimony as to custom and usage, the remaining points urged in connection therewith become unimportant. Furthermore, it may be well to state that nothing that has been said herein should be construed as holding or indicating that any of the parties here involved were or were not negligent. Those are pure questions of fact to be determined in the trial court on the retrial of the action.

The order granting the new trial is affirmed.

Peters, P. J., and Ward, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied August 26, 1943.