Fred MAYFIELD, Plaintiff,
PACIFIC INDEMNITY COMPANY,
Plaintiff in Intervention,

v.

UNITED STATES of America, First Doe,
Second Doe and Third Doe,
Defendants.

No. 32821.

United States District Court
N. D. California, S. D.
Jan. 11, 1956.

Smith & Parrish, Oakland, Cal., for plaintiff.

Boyd. & Taylor, San Francisco, Cal., for plaintiff in intervention.

.Lloyd H. Burke, U. S. Atty., Frederick J. Woelflen, Asst. U. S. Atty., San Francisco, Cal., for defendant United ' States.

ROCHE, Chief Judge.

Plaintiff incurred acid burns while attempting to replace and secure acid drain lines at the Mare Island Naval Shipyards. He prays for judgment against the United States on the ground of negligence.

The facts of this case are as follows:

Plaintiff was employed by Jacobs Plumbing Company (hereinafter referred to as "Jacobs") as a plumber, pipefitter and welder in 1952. Plaintiff's experience at this type of employment dates back to 1936. Jacobs was awarded a contract by the government on June 26, 1952 to replace and secure the acid drain lines leading to acid storage tanks located at the Mare Island Shipyards. The contract between Jacobs and defendant provided that "all piping shall follow the general arrangement of the piping being replaced, shall be fabricated accurately to measurements established from the site by the contractor, and shall be worked into place without springing or forcing." Plaintiff was one of the employees assigned to this job.

The accident occurred when plaintiff loosened the bolts of a flange which held two pipes together. One of these pipes was made of lead (which was readily observable) and extended directly from the acid storage tank. The other was made of steel and was lead lined. These pipes were part of the drainage system of the acid storage tank. When plaintiff loosened the bolts of the flange it caused the flange to part and drop one-half inch, thus liberating a flow of acid which spilled down on plaintiff.

■■ One of the questions to be answered in this case is whether the plaintiff had been apprised of the presence of acid, thus putting him on notice that he should proceed cautiously in doing his work. Plaintiff has cited numerous California authorities announcing the duty of a landowner to warn invitees of dangers on his premises which are attendant upon the work to be performed by a laborer when the risks are not readily apparent to the eye, e. g., Burke v. John E. Marshall, Inc., 42 Cal.App.2d 195, 108 P.2d 738; Shanley v. American Olive Co., 185 Cal. 552, 197 P. 793; Hinds v. Wheadon, 19 Cal.2d 458, 121 P.2d 724. The court has reviewed the evidence in this case and concludes that plaintiff was given ample warning of the existence or of the possible presence of acid in the storage tanks and any lead pipes which he might encounter. In addition the plaintiff himself testified that there was a sign on a service line which rested in a channel indicating that it contained acid. He also testified that near the scene of the accident there was a trailer which was marked with a similar sign, reading Danger—Acid. Further the schematic drawing disclosed that the tanks were used to store 5,000 gallons of acid. With this prior information, it required no special training, knowledge or power of observation on plaintiff's part to determine the actual presence of acid in the storage tank. The defendant, after having warned plaintiff of the danger was thereafter relieved of the responsibility of continually reminding him of the danger.

The plaintiff has assigned several other reasons for placing the responsibility for his mishap on the defendant. Generally speaking he has alleged (1) that defendant's schematic drawing showing the work to be performed was misleadingly drawn; (2) that plaintiff relied on the fact that an adjacent storage tank on which he had worked gave no appearance of containing acid; and (3) that the defendant had not properly marked the

tanks and piping underneath the tanks so as to indicate the presence of acid.

As to the schematic diagram, the court concludes that it did not proximately contribute to the cause of this accident in view of plaintiff's prior knowledge of the contents of lead pipes. There is testimony in this record that plaintiff was instructed to stay away from all lead pipes, that they were acid carrying pipes.

Plaintiff's argument that he assumed the acid storage tank was empty because he had previously not seen acid in the adjacent Southwest tank bears little weight. Such assumption would necessarily have been based on speculative reasoning, and was not prudent in view of the other evidence in this case. The two storage tanks have no relation to one another, except for the fact that they are both used for the storage of acid and are located in proximity. There is nothing in the record which would indicate that plaintiff had been told that if one tank was found empty that the other one would surely be empty, too. The reason that the Southwest tank was empty is it had been recently repaired and was allowed to remain empty pending completion of the new drain line.

■ The court is of the opinion that the failure to mark the tanks and piping, i. e., by painting the tanks and pipes a distinctive color denoting acid, is not material to the determination herein. If color markings had been used, at best they would have been constructive notice of the presence of acid. Here, however, plaintiff had been given actual notice that he was working in an area where he might encounter acid, particularly in any lead pipes he might work on. In fact it had been pointed out to plaintiff and his fellow workers that showers were located under the tanks, to be used in the event that any acid should fall on their persons. Giving the best view of the evidence to the plaintiff, if he had the state of mind that he said he had, that is, that said tank did not contain acid, then certainly markings would not have affected his actions in the least. In such case, even if the markings were present, plaintiff's prior conclusion that no acid was present would have resulted in the accident occurring nonetheless. It should be noted that these particular pipes were located high above the ground, in a facility which was located in an isolated area not normally used by the public.

In view of plaintiff's prior knowledge of the danger, the court finds him contributorily negligent in proceeding to hook up the drain line in the manner that he did without first ascertaining for certain if acid was present in the tank. Of particular significance in this regard is the fact that at the very end of the drain pipe on which he was working, readily accessible to plaintiff, was a gate valve which at the time of the accident was closed. At no time prior to plaintiff's "cracking" the flange of the drain pipes did he make any attempt to open the valve for the purpose of determining whether the drain line contained acid. Nor did he exercise the expedient of making inquiry of the government employees of the presence of acid in the tank and pipes.

■■ In conclusion the plaintiff has failed to sustain the burden of proving conduct on the part of the government amounting to negligence, and the evidence discloses that plaintiff's own conduct in the face of a known danger amounts to contributory negligence of such degree as to bar his recovery.

In accord with the foregoing

It is ordered that judgment be entered herein upon findings of fact and conclusions of law in favor of the defendant against plaintiff. The respective parties to pay their own costs.